PETER J. ELIASBERG (SBN 189110)
peliasberg@aclusocal.org
JONATHAN MARKOVITZ (SBN 301767)
jmarkovitz@aclusocal.org
ALYSSA MORONES (SBN 343358)
amorones@aclusocal.org
**ACLU FOUNDATION OF**
**SOUTHERN CALIFORNIA**
1313 W. 8th Street
Los Angeles, CA 90017
Phone: (213) 977-9500
Fax: (213) 977-5299

DAVID LOY (SBN 229235)
dloy@firstamendmentcoalition.org
KHRYSTAN POLICARPIO (SBN 349170)
kpolicarpio@firstamendmentcoalition.org
**FIRST AMENDMENT COALITION**
534 4th St Ste B
San Rafael, CA 94901
Phone: (415) 460-5060

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UPNEET DHALIWAL and JULIE GEARY,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSEPH KOMROSKY in his official capacity as president of TEMECULA VALLEY UNIFIED SCHOOL DISTRICT BOARD OF TRUSTEES, and TEMECULA VALLEY UNIFIED SCHOOL DISTRICT<br><br>Defendants. | CASE NO.  5:23-CV-02605-JGB (SHK)<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES**<br>[Pursuant to 42 U.S.C. § 1983 for violation of the First Amendment; Cal. Const., Art. I, XIV §§ 2,3; Cal. Gov't Code §§ 54960, 54960.1, 54960.2 (the Ralph M. Brown Act); Amendment pursuant to Fed. R. Civ. P. 15(a)(1)(A)] |

**JURISDICTION AND VENUE**

1.   This action seeks declaratory and injunctive relief, as well as nominal damages, to remedy the deprivation of Plaintiffs' federal and state constitutional and statutory rights and to prevent the Temecula Valley Unified School District Board of Trustees (the "Board") and its President, Defendant Joseph Komrosky, from violating their rights in the future. This Court has jurisdiction over the federal civil rights claims under 28 U.S.C. §§ 1331 and 1343. Declaratory and/or injunctive relief is authorized under 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). The Court's exercise of supplemental jurisdiction over Plaintiffs' claims under state law is proper, as the state law claims "are so related to [Plaintiffs' claims] that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

2.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the County of Riverside, California.

3.   Plaintiffs Upneet Dhaliwal and Julie Geary (collectively, "Plaintiffs") allege as follows:

**INTRODUCTION**

4.   Defendant Komrosky has repeatedly ordered numerous members of the public, including Plaintiffs, removed from Board meetings when they were not engaged in disruptive conduct, and without adequate warning, in violation of the public's federal constitutional and state statutory rights to petition government and observe and/or participate in the conduct of the people's business on matters of great interest and importance, and of California's open meetings law, the Ralph M. Brown Act, California Government Code §§ 54950-54963  (the "Act" or the "Brown Act"). Mr. Komrosky has implemented an expulsion process that ensures systemic repetition of these violations, which will chill the ability of Plaintiffs and other members of the public to participate in future board meetings.

1

5.     Defendant Temecula Valley Unified School District ratified and encouraged Mr. Komrosky's actions by adopting as Board policy a set of unconstitutionally vague and overbroad regulations that govern purportedly "disruptive" conduct at Board meetings. This policy helps ensure Mr. Komrosky's pattern and practice of violating the public's rights to free speech and access to government will continue and that there is a credible threat people will be expelled from meetings for conduct that is not disruptive absent an injunction against enforcement of the regulations.

6.     Plaintiffs respectfully ask the Court to issue an order, *inter alia*, enjoining Defendants from violating the public's constitutional and statutory rights by ordering members of the public expelled from Board meetings when they have not engaged in disruptive conduct and when they have not been provided adequate warning, and from enforcing any portion of the regulations that enables such expulsions.

## PARTIES

### Plaintiffs

7.     Plaintiff Upneet Dhaliwal is, and at all times mentioned in this Complaint was, a resident of Riverside County and Temecula. She is a parent of a seventh grader in Temecula Middle School. She has attended Board meetings because they address issues that are important to her family and for her child's education. She values the opportunity to provide public comment to address those issues. Mr. Komrosky violated her rights when he interrupted her and ordered her expelled from the September 1, 2023 special Board meeting while she was providing public comments, even though she was not disrupting the meeting.

8.     Mr. Komrosky's actions have discouraged Ms. Dhaliwal from exercising her constitutional and statutory rights to attend Board meetings and provide public comment. She has continued to provide public comment, but she now relies on email first. She plans to attend future meetings to ensure that the Board cannot enact damaging policies in a vacuum, but that is only because she is particularly tenacious.

9.     Plaintiff Julie Geary is, and at all times mentioned in this Complaint was, a

resident of Riverside County and Temecula. She has been a resident of Temecula Valley for most of the past 25 years. She and her husband bought a home in the area because of the high quality of the public schools. She cares about the issues that the Temecula Valley Unified School Board works on because she is a teacher and Temecula is her community. As a teacher, she cares deeply about the right to a free and fair public education, and about fundamental constitutional rights and civil liberties. As someone who is devoted to ensuring that children in her community receive a meaningful education and who values community engagement in government affairs, she has been outraged and dismayed as she has watched Mr. Komrosky expel numerous people from multiple Board meetings when they were not creating any kind of disturbance or interfering with the way the Board members were conducting the meetings. Mr. Komrosky ordered Ms. Geary removed from three recent Board meetings when she was quietly expressing concern about Board actions while seated in the audience. She was escorted out of the room by three armed sheriff's deputies at two of those meetings. Her expulsion from the first meeting was covered on television news, and Ms. Geary was forced to reassure friends and colleagues that she had not been arrested and was only standing up to defend people's constitutional rights.

10.  Mr. Komrosky's actions have also made Ms. Geary a target for people who attend Board meetings and disagree with her positions. The atmosphere at recent board meetings has been particularly heated, and people who support Mr. Komrosky have followed Ms. Geary to her car and posted videos of her online claiming that she is a groomer or pedophile.

11.  On August 21, 2023, Ms. Geary sent a letter to Mr. Komrosky and all Board members informing them that Mr. Komrosky and the Board had violated the First Amendment, the Brown Act, and the California constitution in numerous ways over the previous several months, that the violations continued through the present, and the Board had enacted policies that would ensure continued violations in the future.

3

The letter demanded that the Board cease and desist violating the public's rights.

12.  Mr. Komrosky's actions have made it more difficult for Ms. Geary to attend Board meetings and harder for her to speak out. She has continued attending meetings. But the Board's actions against her have made her want to attend less frequently because it has become too emotionally taxing. She decided not to attend the October 17, 2023, and November 14, 2023 meetings because she did not want to subject herself to the same kind of treatment again. She decided that it was not worth it to try to exercise her rights if she risked being thrown out by law enforcement for doing so. She still wants to attend Board meetings in the future, partly because she knows there are other people who won't feel comfortable speaking, and she can express concerns that they are not willing to express. But she feels Defendants have created a hostile atmosphere at the Board meetings that exacts an emotionally exhausting and draining toll. So she does not plan to attend as often as she would otherwise and cannot exercise her rights to free speech and to petition the government without considerable personal cost.

### Defendants

13.  **Defendant Joseph Komrosky** is sued in his official and individual capacities. He is the President of Defendant Temecula Valley Unified School District Board of Trustees.

14.  **Defendant Temecula Valley Unified School District Board of Trustees ("Board")** is the governing body of Defendant Temecula Valley Unified School District. *See* Cal. Educ. Code § 35010(a).

15.  **Defendant Temecula Valley Unified School District ("TVUSD")** is the local education agency governed by the Board. Its headquarters are at 31350 Ranch Vista Road, Temecula, California, 92592. It is responsible for adopting regulations governing the conduct of Board meetings. *See* Gov't Code § 54954.3. The disruptive conduct regulations adopted by Defendant TVUSD are, therefore, official Board policy.

### STATEMENT OF FACTS

**A. Policies Implemented by Defendant Komrosky and the Board to Expel Members of the Public from Board Meetings**

16. Mr. Komrosky has taken an innovative approach to expelling members of the public from open Board meetings, relying on a penalty card system loosely borrowed from soccer matches.

17. Mr. Komrosky inaugurated his penalty card system at the June 27, 2023 Board meeting, where he explained: "If you cause disruptions you will be removed. What I'm gonna do tonight, we'll do something new to save time. If I give you this (holding yellow card up), from all my soccer buddies that's your first warning. If I give you a second one and this, (holding red card up), you're out, you can see yourself out. A disruption can be a loud outburst or even something like constant talking in the rear that causes one of the board members and staff here to lose the ability to concentrate and thus govern properly. Also, when people are commenting, no yelling. There's going to be controversial comments coming from both sides. Be respectful and let people talk. If you comment you're going to get yellow carded. If you keep on talking, you're going to get red and you're going to get out. … I expect you to follow the rules of proper decorum and I reserve the right -- If I give you the first warning, and it's so egregious, and it is a yellow card, you're going to be asked to be removed. I've had very egregious instances where people just get up and start yelling at the top of their lungs. I don't care who you are, it's just not gonna happen tonight. This is fair notice that if you have a burning desire to cause disruption, you'll be removed."

18. Starting with the June 27, 2023 Board meeting, Mr. Komrosky began to regularly hold up a yellow card when he identified something he wanted to label as disruptive conduct, telling the individual, or group of individuals, either that they had received a yellow card or a warning, but failing to inform them that their behavior was disrupting the meeting or that their failure to cease their behavior may result in

their removal.

19.  Mr. Komrosky has continued to rely on his penalty card system in meetings subsequent to the June 27, 2023 Board meeting, though the specific language of the opening monologue he provides has changed in some ways over time.

20.  Until at least late September 2023, the explanation that Mr. Komrosky provided for his penalty card system did not state that people will be "yellow flagged" or warned only when they are engaged in disruptive conduct, as required by Cal. Gov't Code § 54957.95(a)(2). Nor does Defendant Komrosky's explanation inform audience members about the requirement in the same statutory provision that they cannot be removed if they are involved in genuinely disruptive conduct but immediately cease that conduct, unless they are using force or make a true threat of force.

21.  At the October 17, 2023 Board meeting, Mr. Komrosky provided a new explanation for his penalty card system. As he issued the revised warning, Mr. Komrosky stated, in relevant part, that "hate speech, obscenity, or any other conduct during public comment that does or is likely to disrupt the Board meeting from proceeding is prohibited. Similarly, conduct by audience members that does or is likely to disrupt public comment or any other aspect of the Board meeting from proceeding is prohibited." Then, as he displayed his yellow and red cards, Mr. Komrosky stated that "if I use these cards, these are symbolic representations. I use them to give warnings to save time. If you see me point to you and give you a yellow card, it's your first warning that you're disrupting the Board meeting from proceeding. If you receive a second yellow then it automatically turns into a red and you will be asked to escort yourself out of the Board meeting. If your behavior is egregious enough you will be given a red card and you will be asked to escort yourself out. If asked to escort yourself out and if you don't, I'll ask security to help escort you out."

22.  At the August 9, 2023 open meeting, the Board voted to pass its agenda item

K.1, adopting new regulations "related to board meeting disruptions pursuant to Government Code Sections 54954.3 and 54957.95." These regulations include a list of types of conduct that are deemed "disruptive" and a requirement to "advise attendees of the Board's prohibitions of disruptions based on these and other forms of conduct." During the meeting, Komrosky indicated that this advisal would take the form of posting a notice at Board meetings that would contain a list of the varieties of purportedly "disruptive" conduct.

23.   The types of conduct listed in the August 9, 2023 notice are: "Use of hate speech, obscenity, and similar conduct"; "Loud, profane, and abusive language"; "Speaking, whistling, clapping, stomping feet, and other conduct interrupting recognized speaker(s)"; "Use of force and threats of force"; "Efforts to engage other attendees for the purpose of creating a disruption"; "Display of signs or other large objects designed to block attendees' view or participation [in a] meeting"; and "Refusal to comply with directives to comply with rules of conduct."

24.   The notice implied that each of these types of conduct would automatically be deemed disruptive, regardless of whether they actually disrupt or impede the Board meeting.

25.   By October 31, 2023, the Board had revised its disruptive conduct regulations, apparently in response to Ms. Geary's August 21, 2023 letter.

26.   The regulations are included in a "Board Meeting Poster" that is displayed for audience members to view at Board meetings, a copy of which was sent to Plaintiffs' counsel on October 31, 2023, in response to a request for public records.

27.   The revised regulations state that "Attendees who disrupt the meeting will be removed by the Board President or designee in accordance with Government Code section 54957.95."

28.   The Poster states that "Disruptions include: 'Disturbing, impeding, or preventing orderly conduct of meeting; Use of hate speech, obscenity, or similar conduct that disrupts *or is likely to disrupt* [the] meeting; Use of loud, profane, or

abusive language that disrupts *or is likely to disrupt* [the] meeting; Speaking, whistling, clapping, stomping feet, or other conducting [sic] interrupting recognized speaker(s); Use of force or threats of force; Engaging other attendees for the purpose of creating a disruption; Display of signs or other large objects designed to block attendees' view or participation of meeting; Refusal to comply with directives to comply with rules of conduct; and Any other conduct that disrupts the meeting.'" (emphasis added).

29.  Mr. Komrosky regularly refers to the Poster when informing members of the public about his ability to order people removed from Board meetings. For example, at the December 12, 2023 Board Meeting, as part of Mr. Komrosky's explanation of the types of conduct that are prohibited at Board meetings and that can result in expulsion, he pointed to copies of the Poster and stated that "we have posted our objective expectations on each of the walls for the audience members to act civilly."

30.  The revised regulations and Poster make clear that Mr. Komrosky or his designee will order members of the public removed when they engage in conduct they deem merely "likely to disrupt" the meeting, rather than ordering removal only when an attendee engages in conduct that *actually* disrupts the meeting.

### B. Expulsions of Plaintiffs from Board Meetings

31.  Mr. Komrosky ordered Ms. Geary removed from three recent Board meetings for quietly expressing concern about Board actions while she was seated in the audience.

32.  Ms. Geary was in the audience at the July 18, 2023 meeting, where she observed public comment provided by a man named Chauncey ("Slim") Killens, who spoke in favor of the Board's textbook policy, saying that God could show his power through the Board majority. Mr Killens also made a series of hateful comments directed to members of the LGBTQ+ community and their supporters, including the Governor of California. For example, he stated that "boys cannot be girls, girls cannot be boys, men do not get pregnant … now [the Governor is]

justifying the sexual perversion of young children" and the "California Board of Education is grooming our children for pederasty and pedophilia." Towards the end of his comments, Mr. Killens seemed to take on the persona of God as he informed "Pharoah Gavin Newsom" that "pride and arrogance is why I destroyed Pharaoh of Egypt and his … army, and if necessary, I will destroy you and your woke army."

33.  Earlier in the meeting, Mr. Komrosky had ordered the expulsion of Temecula Valley Unified School District teacher Jennifer ("Jennee") Scharf for calling Board Member Danny Gonzalez a "homophobe" while she was providing public comment.

34.  Just before Mr. Killens spoke, Mr. Komrosky ordered Pastor Tim Thompson expelled for referring to another Board member as "probably a communist" during his public comments.

35.  Neither Ms. Scharf nor Pastor Thompson were disruptive in any way. They were both clearly expelled for no reason other than the content of their comments.

36.  Ms. Geary believed that Mr. Killens' comments were far more heated and inflammatory than the comments of either Ms. Scharf or Pastor Thompson. They were openly insulting and derogatory, and, she thought, threatening. Yet, Mr. Komrosky made no effort to dissuade him from insulting or threatening anyone and did not order him removed.

37.  Ms. Geary did not think that Ms. Scharf or Pastor Thompson should have been expelled from the meeting because they were not disrupting it nor were their comments threatening in any way – they were merely speaking their mind, albeit using language that many people might find very critical. However, Ms. Geary also thought that if Mr. Komrosky was going to order people removed from the meeting because he thought their comments were insulting or derogatory, then it did not make sense that Mr. Killens was permitted to remain in the room when Ms. Scharf and Pastor Thompson were not.

38.  Ms. Geary was so frustrated by what she perceived as a double standard about what speakers are allowed to do or say based on whether they are supporting

the board majority or not supporting it, that she just held out her arms in dismay.

39.   And, because Ms. Geary was sitting in the second row in direct eye contact with the Mr. Komrosky, she said something to him in a conversational voice like "What is this? I don't understand. Are we allowed to threaten people?" as the next speaker was approaching the podium.

40.   Ms. Geary did not impede the progress of the new speaker or attempt to stop him from speaking. Before the speaker reached the podium, Mr. Komrosky held up his red card, ordering Ms. Geary expelled from the meeting without warning her that she was being disruptive or that she would be expelled if she did not stop speaking.

41.    Because the Board was waiting for that speaker to reach the podium and begin his comments, there was no Board business occurring at the time Ms. Geary spoke from the audience, and hence no business for her to disrupt.

42.   As she gathered her belongings, and as three sheriff's deputies approached Ms. Geary to escort her out, Board Member Allison Barclay noted "She has a valid point. That definitely sounded like a threat… I mean, am I wrong? Joe was that not a threat?"

43.   Ms. Geary's expulsion was covered on the television news. Friends and colleagues asked her about it and wanted to know if she had been arrested. She was forced to explain what happened and to let people know that she was not trying to be a troublemaker or to disrupt a meeting, but only felt a need to stand up when she sees someone violating others' constitutional rights.

44.   Mr. Komrosky also ordered Ms. Geary removed from the August 9, 2023 Board meeting when the Board was discussing new disruptive conduct regulations. Ms. Geary was speaking in a calm and low voice to people sitting around her in the audience, to question the Board's understanding and definitions of "hate speech," and to say that the proposed regulations would violate the public's First Amendment rights. Her comments are barely audible on the video of the meeting (see https://www.youtube.com/watch?v=r1zBmCTY7GI&t=3817s at approximately

57:30), and she certainly did not speak over any board member. While she might have told the Board President that he was wrong, she was not yelling, and Mr. Komrosky never told or warned her she was being disruptive.

45. As Ms. Geary was expelled, Board Member Barclay told Mr. Komrosky that it was ironic that he was kicking Ms. Geary out as the Board was discussing the disruptive conduct regulations, because it was Mr. Komrosky who was actually "delaying" and "disrupting the meeting."

46. When Ms. Geary attends Board meetings, it is easy for Board members, including Mr. Komrosky, to recognize that she is there to oppose the policy agenda of the Board majority. She usually sits with other people who are dressed in ways that demonstrate that they are opposed to some of the Board's actions. Some of the people she sits with often wear blue t-shirts. She occasionally wears a One Temecula Valley Political Action Committee t-shirt with a circle logo containing a mountain graphic that would be recognizable to Mr. Komrosky as a symbol of opposition to his policies. The t-shirt is blue because it was designed to express solidarity with the teachers' union t-shirts, which are also blue. People who attend the Board meetings to support the Board's actions often sit on the other side of the room and often wear red. This makes it easy for the most part to tell what side of the political aisle people are on.

47. Mr. Komrosky also ordered Ms. Dhaliwal expelled from the September 1, 2023 special Board meeting when she was providing public comment.

48. The meeting had an agenda item to change the qualifications needed to hire a Superintendent. The agenda item included a "rationale" section and a job description.

49. Ms. Dhaliwal wanted to provide public comment objecting to both the "rationale" section and the job description, but Mr. Komrosky apparently determined that her comments did not address the agenda item, and interrupted her, telling her, in effect, to "stick to the agenda," before instructing her to yield her time, and cutting her microphone feed.

50.  When Ms. Dhaliwal continued to speak, Mr. Komrosky ordered a sheriff's deputy to have her removed from the meeting. To avoid being escorted out by law enforcement officers, Ms. Dhaliwal left the meeting on her own.

51.  Throughout her comments, Ms. Dhaliwal spoke in an even tone. She did not shout, scream, or engage in any conduct that disrupted the Board meeting. Mr. Komrosky did not warn her that she was engaging in disruptive conduct, or provide an opportunity for her to cease engaging in any allegedly disruptive conduct, before ordering her expelled.

### C. Expulsions of Other Members of the Public from Board Meetings

52.  Mr. Komrosky ordered a woman named Monica Lacombe removed from the May 16, 2023 meeting after pointing at a group of people sitting together in one part of the room, and telling them "audience, this is a warning, this is a warning to this group over here. First warning." It is unclear what provoked Mr. Komrosky's ire, but Ms. Lacombe immediately agreed to leave, but told Mr. Komrosky not to point at them in a soft but firm voice, as she pointed back at him. Mr. Komrosky continued to point at Ms. Lacombe, telling her "you got the first warning." Ms. Lacombe again told Mr. Komrosky "don't do that" in a fairly soft voice. She stopped speaking, but Mr. Komrosky nevertheless told Ms. Lacombe "You're outta here." As she started to leave, Mr. Komrosky ordered security to escort Ms. Lacombe out. Mr. Komrosky never told Ms. Lacombe that she was engaged in disruptive conduct.

53.  During the public comment period of the otherwise closed session of the June 13, 2023 Board meeting, Pastor Deon Hairston criticized the Board's decision to implement its purported "critical race theory" or "CRT" ban, addressing what he considered poor leadership and racist decision making. At one point during his comments, Mr. Komrosky interrupted Pastor Hairston, and told him to "be respectful, Deon." As part of his public comment in the open session of the same meeting, Pastor Hairston addressed a history of Mr. Komrosky's having targeted Black members of the public for expulsion. He noted that he was the only Black

speaker at the public comment period of the closed session earlier that day, and that even though other speakers had addressed the CRT ban during that session, he was the only speaker Mr. Komrosky interrupted and told he was off topic. He also noted that Mr. Komrosky had ejected three Black women in earlier meetings. He said that even white community members had approached him, asking why Mr. Komrosky was "targeting Black people in such an openly racist manner, with no shame?" Mr. Hairston said that the community had noticed Mr. Komrosky's "habit of kicking Black people out," and reminded the board that Mr. Komrosky had ordered him removed from an earlier meeting after Pastor Hairston objected to a white woman's yelling that he should "go back to Africa."

54.  Later in the June 13, 2023 open session, Mr. Komrosky targeted two audience members for ejection. If the people who were ejected were engaged in any conversation, it was not loud enough to be captured in the recording, and clearly was not genuinely disruptive. Nevertheless, Mr. Komrosky can be heard saying "That's a first warning for the person in the audience right there. Thank you. Thank you. Let us conduct business. Thank you. Audience member. Second warning, both of you are removed." There was no time at all between Mr. Komrosky's reference to a second audience member and his decision to eject both people. Mr. Komrosky certainly provided the second audience member no opportunity to cease the allegedly disruptive conduct, or even to be clearly accused of having engaged in disruptive conduct.

55.  Mr. Komrosky ordered Temecula Valley Unified School District teacher Jennee Scharf removed from the July 18, 2023 Board meeting after she called Board member Danny Gonzalez a "homophobe" while she was providing public comment and speaking in a calm and measured tone. As the *Los Angeles Times* reported, Mr. Gonzalez had supported a decision to reject proposed instructional material that mentioned "slain gay rights leader Harvey Milk" by baselessly claiming "[w]ithout

evidence… that [the] proposed instruction would promote pedophilia."[1] Ms. Scharf's conduct was in no way disruptive, and Mr. Komrosky's actions left Board member Allison Barclay befuddled, forcing her to ask for an explanation and telling Mr. Komrosky that she objected to the ejection.

56.  In defense of his actions, Mr. Komrosky could only offer that "we're gonna conduct this meeting without name calling, racism, derogatory remarks to the board members like what just occurred."

57.  At the August 9, 2023 Special Session Board meeting, Mr. Komrosky suggested that the reason he ordered Ms. Scharf removed from the July 18 meeting was that he considered her use of the word "homophobe" to be hate speech.

58.  When he was interviewed for the August 28, 2023 episode of the "Point. Blank. Truth." podcast, Mr. Komrosky confirmed his belief that what he referred to as "the conventional First Amendment" does not apply to Board meetings, where he is "justified" in ordering people expelled when they say words that he considers "hate speech," including "homophobe, groomer, pedophile, you know, white supremacist or, whatever" because such words "could elicit violence."[2]

59.  Minutes after ordering Ms. Scharf removed from the July 18 meeting, Mr. Komrosky ordered Pastor Tim Thompson expelled for referring to another Board member as "probably a Communist" because he had expressed support for Governor Newsom's comments about the district. Like Ms. Scharf, Mr. Thompson was speaking in a calm but deliberate and forceful tone during public comment and did nothing more than criticize a Board member.

---

[1] Mackenzie Mays, *Temecula School Board Outrage Over LGBTQ+ Lessons Motivates Newsom to Rush New Textbook Law*, L.A. TIMES (July 19, 2023), https://www.latimes.com/california/story/2023-07-19/newsoms-push-for-textbook-regulation-defies-current-state-law. Video of the incident can be viewed at approximately 8 minutes and 45 seconds into the video of the meeting, found here: https://www.youtube.com/watch?v=NN-Z_IcswqM.

[2] *Point.Blank.Truth. Podcast*, IHEART (Aug. 28, 2023), https://www.iheart.com/podcast/338-pointblanktruth-podcast-121908933/.

60.   At the August 9, 2023 Special Session Board Meeting, after the Board abruptly ended public comment about a motion to hire a law firm to represent it in a challenge to the Board's purported ban on "CRT," some of the audience members on one side of the room objected to the decision. There are audible boos on the recording of the meeting, and one person yells out "Dictator, Dictator, kick me out, I don't care." While that individual may have been engaged in disruptive conduct, other members of the public who were sitting on that side of the room were not engaged in disruptive conduct but Mr. Komrosky  nevertheless ejected them from the meeting.

### D. Brown Act Procedural History

61.   When it enacted the Brown Act, the California Legislature found and declared that public agencies and boards exist to aid in the conduct of the people's business, and their actions are intended to be taken openly and their deliberations be conducted openly. *See* Cal. Gov't Code § 54950. Accordingly, "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency." Cal. Gov't Code § 54953(a). Additionally, "[e]very agenda for regular meetings shall provide an opportunity for members of the public to directly address the legislative body on any item of interest to the public, before or during the legislative body's consideration of the item, that is within the subject matter jurisdiction of the legislative body . . . ." Cal. Gov't Code § 54954.3(c).

62.   "The legislative body of a local agency shall not prohibit public criticism of the policies, procedures, programs, or services of the agency, or of the acts or omissions of the legislative body." *Id*.

63.   The Brown Act provides a private right of action and sets requirements for "any interested person" to "commence an action by mandamus, injunction, or declaratory relief for the purpose of stopping or preventing violations or threatened violations of [the Act] by members of the legislative body of a local agency or to

determine the applicability of [the Act] to ongoing actions or threatened future actions of the legislative body, or to determine the applicability of [the Act] to past actions of the legislative body." Cal. Gov't Code § 54960.

64.   Plaintiff Julie Geary complied with these requirements after she was repeatedly ordered removed from Board meetings July 18, 2023 and August 9, 2023 when she was not engaged in disruptive conduct by timely sending a letter to Board President, Mr. Komrosky, and all Board Members, on August 21, 2023. The letter stated that Mr. Komrosky and the Board had violated the Brown Act and the First Amendment and California constitution in numerous ways over the previous several months, that the violations continued through the present, and that the Board had enacted policies that would ensure continued violations in the future. The letter demanded that the Board cease and desist its Brown Act violations.

65.   The letter notified Mr. Komrosky and other Board members that Ms. Geary and/or other interested parties could take legal action pursuant to Government Code § 54960.2(b) if the Board did not respond to the letter within 30 days, providing its unconditional commitment to cease, desist from, and not repeat the violations described in the letter. Ms. Geary granted two extensions based on requests from the Board's attorney, agreeing that the Board could have until October 18, 2023 to provide an adequate response under § 54960.2(b).

66.   While Ms. Geary was waiting for a response to her August 21, 2023 letter, the Board met on August 17, 2023. During that meeting, Mr. Komrosky engaged in further conduct that violated the Brown Act and First Amendment.

67.   On October 18, 2023, Mr. Komrosky replied to the Ms. Geary's August 21, 2023 letter with a letter stating that the Board "unconditionally commits that it will cease, desist from, and not repeat" the actions alleged in the August 21, 2023 letter.

68.   On October 27, 2023 Plaintiffs' counsel responded to Mr. Komrosky's October 18, 2023 letter, expressing concern about Mr. Komrosky's conduct during the October 17, 2023 Board meeting, and notifying him that violation of the terms of

16

an unconditional commitment to cease and desist from a Brown Act violation constitutes an independent violation of the Brown Act.

Cal Gov't Code § 54960.2(d). The letter advised Mr. Komrosky that future Brown Act and First Amendment violations would expose the Board and the District to additional potential liability. The letter also requested a copy of the Board's current disruptive conduct regulations pursuant to the California Public Records Act.

69.  On October 31, 2023, the Board's Director of Compliance for Human Resources Development, Michael D. Marble, responded to the Public Records request by providing a "Board Meeting Poster" including the new disruptive conduct regulations.

70.  Those regulations suffer from the same constitutional infirmities addressed in Ms. Geary's August 21, 2023 letter. The revised regulations state that "Disruptions will not be tolerated" and that attendees who disrupt the meeting will be removed by the Board President or designee. The Poster states that "Disruptions include" a variety of forms of conduct, including "[u]se of hate speech, obscenity, or similar conduct that disrupts *or is likely to disrupt* [the] meeting" and "[u]se of loud, profane, or abusive language that disrupts *or is likely to disrupt* [the] meeting." (emphasis added).

71.  By continuing to violate the First Amendment and Brown Act even after sending the October 18, 2023 unconditional cease and desist commitment letter, the Board and Mr. Komrosky have voided their commitment to avoid future First Amendment and Brown Act violations, making clear that their commitment was hollow. Plaintiffs Geary and Dhaliwal therefore proceed with their claims for declaratory and injunctive relief and damages.

## **CAUSES OF ACTION**

### **FIRST CLAIM FOR RELIEF**

[Against Defendant Komrosky]

(42 U.S.C. § 1983 - U.S. Const. Amend. I)

17

72.  Plaintiffs allege and replead all the allegations of the preceding paragraphs of this Complaint and incorporate them here by reference.

73.  Mr. Komrosky has deprived Plaintiffs of their rights guaranteed by the First Amendment as incorporated by the Fourteenth Amendment of the United States Constitution.

74.  At all times, Defendant Komrosky has been, is presently, and will be, acting under the color and authority of the laws of the State of California.

75.  The "regulations related to board meeting disruptions pursuant to Government Code sections 54954.3 and 54957.95" that the Board adopted with the passage of agenda item K.1 ("Item K.1") at its August 9, 2023 Special Board Meeting deem various forms of speech and expressive conduct inherently disruptive regardless of whether they actually disrupt or impede a Board meeting, and they grant Mr. Komrosky or his designee the authority to expel members of the public for speech and conduct that does not actually disrupt the meeting. The revised regulations sent to Plaintiffs' counsel on October 31, 2023, and posted at Board meetings after that date contain the same infirmities and grant Mr. Komrosky or his designee the authority to expel members of the public for speech and conduct they conclude is "likely to disrupt the meeting" regardless of whether it actually does. These regulations, or the revised version sent to Plaintiffs' counsel on October 31, 2023, are official Board policy under Government Code § 54954.3, and they ratify Mr. Komrosky's pattern and practice of ordering members of the public expelled from Board meetings when they have not engaged in disruptive behavior.

76.  The regulations adopted by the passage of Item K.1 are not sufficiently narrowly tailored to serve any appropriate government interest or are otherwise unreasonable in light of the purposes served by the Board meetings.

77.  The regulations adopted by the passage of Item K.1 are also unduly vague and ambiguous. They fail to provide adequate notice because they fail to define key terms, including "likely to be disruptive" and "hate speech" that would indicate what

18

speech and expressive conduct is prohibited or may be permitted.

78.  By leaving in place, enforcing, and/or threatening to enforce Item K.1, Defendant Komrosky deprives Plaintiffs and others of rights guaranteed by the First and Fourteenth Amendment of the United States Constitution. Additionally, Mr. Komrosky ordered Ms. Geary expelled from the July 18, 2023 and August 9, 2023 Board meetings, and ordered Ms. Dhaliwal removed from the September 1, 2023 Board meeting, when they were not engaged in disruptive conduct, violating their rights to free speech and free expression, and their right to petition the government under the First Amendment to the United States Constitution.

79.  Defendant Komrosky continues to chill the constitutional rights of Plaintiffs, as well as other people who wish to speak out and criticize the actions of Board members, by enforcing or threatening to enforce a vague and overbroad set of "disruptive conduct" regulations that restrict protected expression at open and public Board meetings.

**SECOND CLAIM FOR RELIEF**

[Against All Defendants]

(Free Speech Under Cal. Const. art. I § 2))

80.  Plaintiffs allege and replead all the allegations of the preceding paragraphs of this Complaint and incorporate them here by reference.

81.  Defendants' rules, policies, and actions, as alleged in this Complaint, deprive Plaintiffs, and members of the general public desiring to speak at Board meetings, of the right to free speech as guaranteed by Article I, section 2 of the California Constitution.

**THIRD CLAIM FOR RELIEF**

[Against Defendant Komrosky]

(42 U.S.C. § 1983 - U.S. Const. Amend. I)

82.  Plaintiffs allege and replead all the allegations of the preceding paragraphs of this Complaint and incorporate them here by reference.

83.  Mr. Komrosky employs his penalty card system to order people expelled from Board meetings when they have not engaged in disruptive conduct.

84.  Mr. Komrosky lacks either a compelling or substantial legitimate government interest in regulating speech and expression in the manner accomplished by use of his penalty card system.

85.  The penalty card system is not sufficiently narrowly tailored to serve any appropriate government interest and is otherwise unreasonable.

86.  To implement the penalty card system, Mr. Komrosky provides an explanation of prohibited conduct that is unduly vague and ambiguous. It fails to provide adequate notice because it fails to define key terms that would indicate what speech and expressive conduct is prohibited or may be permitted.

### FOURTH CLAIM FOR RELIEF

[Against All Defendants]

(Violations of the Ralph M. Brown Act, Cal. Gov't Code §§ 54960, 54960.1, 54960.2, 5497.95)

87.  Plaintiffs allege and replead all the allegations of the preceding paragraphs of this Complaint and incorporate them here by reference.

88.  The TVUSD Board is a legislative body of a local agency and is thus subject to the Brown Act. Cal. Gov't Code § 54952; *see also* Cal. Educ. Code § 35145.

89.  As a local agency, Defendant TVUSD is subject to the Brown Act. Cal. Gov't Code § 54951; see also Cal. Educ. Code § 35145.

90.  The Brown Act vests the presiding member of Board meetings and their designee with the authority to remove, or cause the removal of, an individual for disrupting the meeting, but only if the individual is "engaging in behavior during a meeting of a legislative body that actually disrupts, disturbs, impedes, or renders infeasible the orderly conduct of the meeting" and only if he warns "the individual that their behavior is disrupting the meeting and that their failure to cease their behavior may result in their removal" and if "they do not promptly cease their

disruptive behavior." Cal. Gov't Code § 54957.95.

91.  Mr. Komrosky's decisions to expel Ms. Geary from the July 18, 2023 and August 9, 2023 Board meetings, and to expel Ms. Dhaliwal from the September 1, 2023 Board meeting, when they were not engaged in disruptive conduct, and without warning them that they were engaged in disruptive conduct, violated their rights to observe and address the Board.

92.  Plaintiff Geary demanded Defendants cure or correct/cease and desist those violations.

93.  While Defendants provided cease and desist assurances, they did so immediately after repeating some of the violations alleged in Ms. Geary's cease and desist letter. Then, rather than curing and correcting the violations after providing their cease and desist assurances, Defendants continued to violate the Brown Act. This violation of the terms of an unconditional commitment to cease and desist from a Brown Act violation constitutes an independent violation of the Brown Act under Government Code Section 54960.2(d).

94.  Consequently, Plaintiffs seek relief from this Court.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court:

A. Issue a declaration that all Defendants violated and threaten to continue to violate the First Amendment of the United States Constitution and Cal. Const. art. I § 2 by enacting a vague and overbroad set of "disruptive conduct" regulations that restrict protected expression at open and public Board meetings, and that Mr. Komrosky violated the First and Fourteenth Amendments to the United State Constitution and the Brown Act by ordering Plaintiffs and members of the public expelled from Board meetings when they were not engaged in disruptive conduct, and without adequate warning;

B. Enjoin Defendant Komrosky from committing Constitutional and Brown

1    Act violations detailed in this Complaint;

2    C. Enjoin Defendant Komrosky from continuing to enforce, post, or refer the

3       public to the "disruptive conduct" regulations the District and Board

4       adopted with the passage of agenda item K.1 ("Item K.1") at the August 9,

5       2023 Special Board Meeting or to any revised version of those regulations

6       that allow for the removal of audience members who are not engaged in

7       conduct that actually disrupts a Board Meeting;

8    D. Order Defendants to provide an unconditional assurance per Government

9       Code § 54960.2 that Defendants will comply with the Brown Act;

10   E. Enter judgment for Plaintiffs for nominal damages of $1 against Defendant

11      Komrosky in his individual capacity for violations of the First Amendment

12      and 42 U.S.C. § 1983;

13   F. Order Defendants to pay Plaintiffs' attorneys' fees and costs incurred in

14      this action under 42 U.S.C. § 1988, California Government Code §

15      54960.5, California Code of Civil Procedure § 1021.5, and any other

16      applicable provision of law; and

17   G. Grant such further and different relief as this Court may deem just and

18      proper.

                        Respectfully submitted,

19
20                      ACLU FOUNDATION OF SOUTHERN CALIFORNIA
21
22   Dated: January 4, 2024       By: s/ Jonathan Markovitz
23                                    JONATHAN MARKOVITZ
                                      Attorney for Plaintiffs
24
25
26
27
28